UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF NEW YORK

KAILYN M. LANE,

                            Plaintiff,

                                                       **CIVIL COMPLAINT**
                                                   **JURY TRIAL DEMANDED**

         -against-
                                      **Civil Case No.:**  6:22-CV-0980 (MAD/TWD)

SUNY ONEONTA NY POLICE
OFFICER SCOTT THOMAS in his individual capacity,
SUNY ONEONTA NY POLICE
OFFICER BRUCE BROWN in his individual capacity.

                               Defendants.

---

## PRELIMINARY STATEMENT

    1.  Plaintiff Kailyn M. Lane, by and through her attorney, the Law Office of Patrick Sorsby,

PLLC, as and for her complaint herein states and alleges as follows:

## INTRODUCTION

    2.  Plaintiff, Kailyn M. Lane (herein after "Plaintiff") alleges below that Defendants falsely

arrested her after unlawfully searching her wallet. Plaintiff now seeks redress against the

Defendants in their individual capacities, for violating her rights under 42 U.S.C §1983, and the

Fourth Amendment to the United States Constitution.

## JURISDICTION

    3. This Court has jurisdiction over this matter under the provisions of 28 USC §§ 1331,

1341, & 1343 because it is filed to obtain compensatory and punitive damages for the deprivation,

under color of state law, of the rights of citizens of the United States secured by the Constitution

and federal law pursuant to 42 USC § 1983.

4. Venue is proper under 28 U.S.C. § 1391 (e)(2) because the events giving rise to Plaintiffs claims occurred in this judicial district.

## VENUE

5. This action properly lies in the Northern District of New York, pursuant to 28 U.S.C. § 1391 (e)(2), because the claim arose in this judicial district.

## PARTIES

6. Plaintiff, Kailyn M. Lane, (herein after "Plaintiff" or "Lane" interchangeably) is a citizen and resident of the United States, and currently resides in the County of Suffolk County, State of New York.

7. SUNY Oneonta (herein after "college, campus, or SUNY interchangeably) is a college in the New York State University System ("SUNY") and on information and belief the University Police are employed by said college. A claim against a SUNY college or one if its employees in an official capacity is a claim against the state itself. Any Claim against New York State under section 1983 is prohibited by the 11th amendment to the Constitution. Therefore, the State nor any of its' officials are being named as Defendants in their official capacities.

8. Defendant SUNY Oneonta Police officer Bruce Brown is being named as a Defendant in his individual capacity.

9. Defendant SUNY Oneonta Police officer Scott Thomas is being named as Defendant in his individual capacity.

## FACTS

10. During all times relevant to this case the Plaintiff was a student at New York State University of Oneonta (herein after interchangeably "University" or "campus").

11. On September 18th , 2019 the Claimant had dinner at the campus dining hall and then went to her dorm laundry room to do laundry.

12. In order to enter her dorm building or its amenities including the dorm laundry room the Claimant had to place her student I.D. in front of a reader.

13. Claimant's student I.D. was not required to open her specific dorm room which required the use of a separate key.

14. The Claimant kept her student I.D. in a plastic sleave or window on the outside of her wallet so that she could conveniently access her Dorm building and its amenities (i.e. laundry room, computer room, kitchen) without having to pull her School I.D. out of the Wallet.

15. After eating dinner at the University dining hall while doing laundry in her dorm laundry room on the evening of September 18th 2019 the claimant mislaid her wallet in the Dorm laundry room.

16. The next morning sometime before 10:00 am on September 19th 2019 Edward McKinley, a janitor employed by the Defendant, discovered Claimants mislaid wallet in Claimants Dorm laundry room.

17. When finding a mislaid or lost wallet Janitor McKinley's practice was to search the wallet to identify its owner and then bring the wallet to campus police indicating who the owner was so that the police could return it the rightful owner. However, if the wallet owner's I.D. was visible from the outside of the wallet, he would not search the wallet nor indicate to the police the owner's identity.

18. At no time after discovering Plaintiffs wallet did Janitor McKinley search Plaintiffs wallet to determine the owner's identity nor did he indicate to the campus police when turning the wallet in who the owner was.

19. Janitor McKinley did not search Plaintiffs wallet nor did tell the campus police who the Wallet

belonged to because the Plaintiffs ID was clearly visible from the clear plastic sleave on the outside of her wallet when he handed it over to Dispatcher Defendant Scott Thomas "Defendant Thomas".

20. After discovering Plaintiff's wallet, some time before 10:00 am on the morning of September 19th 2019 Janitor McKinley brought the wallet to the University Police Department and hand delivered it to Defendant Thomas.

21. When Janitor McKinley delivered Claimant's wallet to Defendant Thomas, he did not indicate who the Wallet belonged to.

22. When Defendant Thomas received Plaintiffs wallet he observed that the Plaintiffs ID was visible on the outside of the wallet.

23. Notwithstanding the fact that that the Plaintiffs ID was visible from the outside of her Wallet Defendant Thomas nonetheless without a Search Warrant searched the Claimants wallet and inventoried the items located therein including Claimants School ID and what he believed to be a fake ID.

24. After inventorying the items that he found through his search Defendant Thomas put the items back in Plaintiff's wallet.

25. At the time the Claimant's wallet was found it contained within it the following personal items: cash, her credit card, an insurance card, her driver's license, and prescribed medication of a personal nature.

26. Before searching the claimants, wallet Defendant Thomas did not obtain a Search Warrant.

27. The University Police policy regarding "warrantless search and seizures" states that "every search and seizure by the police must be conducted with a search warrant unless one of the legally recognized exceptions exist" the policy goes onto list 9 exceptions to warrant requirement.

4

28.  When Defendant Thomas searched Claimant's wallet, he believed he was authorized to do so pursuant to New York State Real Property Law and SUNY University policy.

29. No where in the NY SUNY University policy regarding warrantless searches is there an exception to the warrant requirement based on NY real property.

30. After inventorying the personal effects in claimant's wallet Dispatcher Thomas called SUNY Oneonta State Police officer Bruce Brown ("Defendant Brown") to return to the University Police Department because he found a fake I.D.

31. On information and belief Defendant Brown returned to the University Police Department sometime between 9:48 am and 10:40 am.

32. On information and belief based on what he observed and his conversations with Defendant Thomas Defendant Brown became aware that the wallet the Janitor turned into Defendant Thomas belonged to the Plaintiff.

33. When Defendant Brown arrived, Defendant Thomas delivered to him Plaintiffs wallet in same manner as he Defendant Thomas had received from the janitor with the fake ID inside and the School ID visible from the outside.

34. Defendant Brown without a Search Warrant or exception to the Warrant requirement searched Plaintiffs wallet after the search of Defendant Thomas and confirmed that it contained what he believed to be a fake ID.

35. Defendant Brown implemented, promoted, encouraged and otherwise facilitated a policy of searching property turned into the police department without a warrant or exception or clear indication that the property was forever abandoned.

36. Defendant Brown exercised supervisory authority over Defendant Thomas.

37.  At the time of Defendant Brown's search of Plaintiffs wallet, he knew that it belonged to the Plaintiff.

38. On September 19th, the claimant received a call around 10:00 am from a woman in the banquet facilities letting her know that her wallet was found and turned into the university police.

39. Shortly after receiving the phone call from the dining hall the claimant received a call from Defendant Thomas stating that her wallet had been turned in.

40. Defendant Thomas avoided telling the Plaintiff that found what they believed to be a fake and that Defendant Thomas and Brown intended to place her under arrest when she arrived.

41. The claimant arrived at the University Police department within a half hour of receiving the phone call from Defendant Thomas and she was directed by him to wait for Defendant Brown.

42. At around 10:44 am on September 19th 2019 Defendant Brown read Plaintiff her Miranda rights and then placed under arrest by him at 10:45 am for possession of the fake I.D.  Plaintiff was charged with and arrest for Possession of a Forged Instrument in the Third-Degree charge (See People v. Kaiylin M. Lane (Docket No. CR-01217-19).

43. The Plaintiff retained defense counsel and was released on her recognizance while she waited for her January 28, 2020 a suppression hearing.

44. On January 28, 2020 a suppression hearing was held in the City Court of Oneonta and evidence was taken. Based on that evidence, the court held that the claimant had an expectation of privacy in her wallet and that the Officers search was illegal in that it was not pursuant to a lawful search warrant nor were there any exceptions to the requirement of a warrant and the search was not based on probable cause.

45.  Additionally, in rendering her decision Criminal Court Judge Bernier found unconvincing the Peoples argument that New York State Real Property required that the Police search Claimant's wallet. The Court held that any such law must comport with the 4th amendment and that the Police did not need to search the wallet "because the owner's identity was

proclaimed by the identification card showing clearly through the window on the outside of the wallet". The Court's Decision is affixed hereto as Exhibit "1" and incorporated herein by reference.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST AGAINST OFFICERS BROWN AND THOMAS

**Unreasonable Search under The Color Of State Law**

46. The allegation in paragraphs "1" through "45" are incorporated herein as if set forth in full.

47. 42 U.S.C. Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused her to be "deprived of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

48. The 4TH Amendment to the United States Constitution protects a citizen's right against unreasonable search and seizures including unlawful arrests. Warrantless searches and seizures are per se unreasonable unless they fall within one of the acknowledged exceptions to the Fourth Amendment's Warrant requirement.

49. Defendant Thomas has contended that he searched the Plaintiffs wallet on September 19th 2019 because NY Real Property Law allowed him to search Plaintiff's wallet without a Search Warrant or a Search Warrant Exception in order to determine the identity of the Wallets owner.

50. However, as the Suppression Court found there was no need to search the Plaintiff's Wallet to determine who owned it because the Plaintiffs ID was clearly visible from the outside of the wallet before Defendant Thomas searched it.  See Exhibit "1".

51. Defendant Brown was individually involved in Defendant Thomas search because he was a superior to Defendant Thomas and created, promulgated, and implemented, a policy of searching property turned into the Police Department without a warrant or exception to the warrant requirement based on NY Real Property even when property has not been abandoned

but mislaid.  This same policy or practice resulted in the unlawful search of Plaintiff's wallet and subsequent unlawful arrest.

52. Before Defendant Thomas gave Defendant Brown Plaintiffs wallet, he (Thomas) put back every item he had taken out including Plaintiffs School ID and the fake ID.

53. Defendant Brown without a Search Warrant or an exception to the Warrant requirement searched the Plaintiff's Wallet again after Defendant Thomas had searched it and returned all of the items back to the Wallet. Defendant Brown knew the identity of the Wallet's owner before he searched it. Thus, assuming arguendo that NY State real property law provides a heretofore not recognized exception to the 4th amendment Defendant Brown like Thomas did not have to search the wallet to determine its identity and thus even NY real property is unavailing to these Defendants.

54. Moreover, Defendant Brown knew Defendant Thomas had unlawfully searched Plaintiffs wallet and so even if he had obtained a Search Warrant (which he did not) the Search of Plaintiffs wallet and subsequent arrest would have been no less illegal. Without a Search Warrant or an exception to the Warrant requirement any search of a person's personal property is per-se illegal.

55. Defendants' contention that New York State Real Property Law provides an exception to the Search Warrant requirement is without precedent. There simply is no such exception to the Search Warrant requirement. Rather whether the Plaintiff merely misplaced/mislaid her wallet or abandoned it is an issue of standing not one of exception to the Warrant Requirement. Here Plaintiffs Wallet was misplaced not abandoned.

56.      Defendants Brown and Thomas under the color of state law cloaked with the power of the state by virtue of their positions as Police Officers deprived the Plaintiff of her 4th amendment right to be free from unreasonable searches by the State when without a Search

Warrant or an exception to the Search Warrant requirement they searched the Plaintiffs wallet. NY state real property law which allows for finders of property to deliver abandon property to the Police does not provide an exception to the 4th Amendment to the U.S. Constitution and does not apply to the facts of this case. Here Plaintiff's wallet was not abandoned nor was there a need to search the Plaintiffs wallet to determine who owned the Wallet because both defendants knew the Plaintiff owned the wallet before they searched it.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST AGAINST OFFICERS BROWN AND THOMAS

### False Arrest Under The Color Of State Law

57. The allegation in paragraphs "46" through "56" are incorporated herein as if set forth in full.

58. On September 19th, 2019 Defendant Thomas contacted Defendant Brown and told him to return to the station because he had discovered a fake ID.

59. Sometime before Defendant Brown returned to the Station Defendant Thomas returned to the Plaintiffs wallet every item, he had removed during his illegal search including the Plaintiffs School ID and the fake ID.

60. When Defendant Brown arrived, he received the wallet from Defendant Thomas in same manner as he Defendant Thomas had received from the janitor with the fake ID inside and the School ID visible from the outside.

61. Defendant Brown without a warrant or exception to the warrant requirement searched Plaintiffs wallet after the Defendant Thomas search and confirmed that her wallet contained an alleged fake ID.

62. Defendant Thomas knowing that the alleged fake ID was fruit of an illegal search asked Ms. Lane to come to the Police department because her Wallet had been turned.

63. Defendant Thomas did not inform the Plaintiff that they had searched wallet or that they

discovered what they believed was a forged instrument.

64. Plaintiff arrived shortly after Defendant Thomas asked her to come to the station and reported to Defendant Thomas who then notified Defendant Brown that Plaintiff had arrived.

65. Defendant Brown then escorted the Plaintiff from the presence of Defendant Thomas into the booking area where he then read her Miranda rights and arrested her.

66. Warrantless searches and seizures are per se unreasonable unless they fall within one of the acknowledged exceptions to the Fourth Amendment's warrant requirement.

67. In this case neither Defendant Brown nor Thomas had a search warrant to search Plaintiff's wallet nor did a recognized exception to the search warrant requirement apply.

68. Moreover, to the extent that either Defendant asserts that NY property law provided an exception to the 4th amendment Plaintiffs wallet was neither abandoned nor discarded.

69. There was no need to search Plaintiffs wallet pursuant to NY real property to determine the identity of the owner because both Defendants Thomas and Brown knew that the Plaintiff owned the wallet before they searched it.

70. Defendant Thomas was individually involved in the Plaintiff's unlawful arrest because 1) he provided Defendant Brown with the fruits of the illegal search 2) he contacted Defendant Brown with the purpose of having the Plaintiff arrested for possession of the fake ID 3) he called the Plaintiff down to the police station knowing she would be arrested under the guise that her wallet was turned in and 4) he received her at the station for her arrest before she was booked by Defendant Brown.

71. Defendant Brown was individually involved in the Plaintiff's unlawful arrest because he read her Miranda rights and placed her under arrest.

72. Defendants Brown and Thomas under the color of state law cloaked with the power of the state by virtue the positions as Police Officers deprived the Plaintiff of her 4th amendment

right to be free from unreasonable seizures by the state insofar as they arrested her based on the fruits of a illegal searches that they both performed.

WHEREFORE, plaintiff respectfully requests that this court enter a judgment:

1. Declaring that the acts and practices complained of herein are in violation of 42 USC 28 section 1983 and constitute the basis for awarding back pay with interest, compensatory damages, other lost benefits, and such other further relief as to this Court seems just and proper.

2. Award to the Plaintiff compensatory damages in each cause of action in an amount to be proven at trial.

3. Award to the Plaintiff exemplary damages for malicious or wanton conduct in each cause of action in an amount to be proven at trial.

4. Award plaintiff the costs, disbursements and attorney's fees for the prosecution of this matter along with such other and further relief as the Court may deem just and proper.

DATED:

September 16, 2022                          LAW OFFICE OF PATRICK SORSBY PLLC

                                            By      S/
                                               Patrick Sorsby
                                               Bar Roll No.: 517840
                                               Attorney for Plaintiff
                                               1568 Central Avenue
                                               Albany, NY 12205
                                               Phone: (518) 545-4529
                                               E-mail: sorsbylaw@gmail.com